T corter, J.
,. 1.1 •• r*,i delivered the opinion of the court. The petition states that the suburb of St. Mary forms a part of, and is included with-the limits of the city of New-Orleans; that if *621 was established in or about the year 1789, by the late Bertrand Gravier, then owner of the plantation on which it has been founded ; who, in the year 1795, enlarged the first plan by the addition of several streets, and a public square, as appears from several plats of survey, drawn by Laveau Trudeau, surveyor general of Louisiana, under the Spanish govern-merit.
East’n District.
June, 1822.
Bythefoimer laws of this country, only one year was allowed after the filing of the pa-mbunfij appeaHo ^⅛-
"“¿Y, after the ¡f°¿ie ^°at ferior tribunal acquired the au-°fresj'u~
When the appeal did not su-®P0e“dite*acsu‘0t ⅛¶? cau°e why
It further avers, that Gravier sold, with reference to these plans, all the lots surrounding the square. Yet, that one John Gravier, who stiles himself heir to the aforesaid Bertrand, has entered into possession of this property. which, by the act of the former proprietor, was destined for public use. — An abatement of works which he has made there is for, and an injunction against any other being , i erecieu.
The defendant, in his answer, denied generally the above allegations.
After the cause had been for some time at issue, Thomas Harman filed a petition intervention, in which he stated that he was the owner of three lots situated in Camp street, fronting on the square already mentioned, and that he held them in virtue of several mesne *622 conveyances from John Baptiste Sarpy, who purchased them, together with seventy-one others, from the late Bertrand Gravier, in 1795.
He also alleged, that on the 2d day ofMay, 1798, the present defendant, John Gravier, presumed so far as to encroach and raise buildings on the public square laid off by his brother, whereupon a suit took place between the said Gravier and J. B. Sarpy, which terminated in two judgments, rendered by the Spanish tribunal, of date the 17th July and 17th Nov., 1798, which judgments ordered the present defendant to leave the ground free for public use, and directed the demolition of the buildings placed there by him. That said judgments have since acquired the a uthority of the “ thing judged,” and have that force and effect between the parties thereto, their heirs and assigns: that, confiding in their force and validity, he made the purchases aforesaid, and he, therefore, prayed for leave to intervene, and that he might have permission to shew that the said property should remain open for the public.
To this petition of intervention, Gravier pleaded, that Harman, by his own shewing, *623 could not be made a party to the suit, and that the facts alleged byhim were untrue.
It becomes necessary to examine, before we proceed further in the investigation of the cause, if this exception to the prayer of the intervening party, to be heard, is well taken.
The defendant urges, that as the mayor, aldermen, and inhabitants, are already parties to this suit, Harman, an inhabitant of the city, cannot join in the proceedings for the purpose of enforcing public rights; and if his claim is a private one, it must be presented in a distinct action.
According to the first and third laws of the 22d title of the 3d Partida, any individual may forbid the erection of a house, or other edifice, in public places. The necessary consequence of giving this right, is, that the person who makes the prohibition, shall be allowed to apply to a court of justice to aid him in the maintenance of it. It will save expense and delay to permit the party now before the court to do this in the present suit, and as he merely urges his private right to aid the public in the maintenance of theirs, and asks judgment for the same thing, his appearing in the cause creates no confusion.
*624 Should vve yield to the reasoning of the appellant, that the corporation represents all the inhabitants of the city, and, therefore, no individual of that city can be heard; we do not see that it would make any difference in the result. For if they represent all the inhabitants, then they can avail themselves of the rights of each of them, so far as they strengthen and support the public claim.
This point disposed of, we approach the merits of the controversy between the parties in this suit.
The plaintiffs and Harman, who has intervened, insist they should obtain the judgment of this court in their favor.
1. Because the right of the defendant to the premises have been adjudicated on in the suit with Sarpy, and that the matters now in dispute, have passed into the authority of res ju-dicata.
2. Because Bertrand Gravier, the ancestor of the defendant, transferred the property now sued for, to the public.
I. It is nqt disputed between the parties, but there was a suit in respect to the same thing, on the same demand; but it is insisted by the defendant, that he appealed from the de- *625 cisión of the Spanish tribunal, and that his rights are not concluded by the judgment rendered.
A decree was given against the appellant on the 17th of July, 1798, directing that the square, already spoken of, should be left free for the public use, and that the works erected on it should be demolished. From this decree an appeal was taken on the 19th. The 16th Nov. a second judgment was given, that Gra-vier should take awrny all the edifices erected on this property. Some delay occurring in the execution of this order, we find that on the 17th of December, the tribunal w hich had rendered these judgments, declares that the former sentence had the authority of the thing judged, and therefore, directs its execution.
The appeal was taken from the first judgment within three days; on the 15th November the papers were filed in an office in Havana, and the 11th of February, 1799, Gravier presented to the tribunal in this city, his certificate of mejora — that he had filed the necessary papers of appeal in that city. It is objected to the regularity of these proceedings, that only forty days were allowed by law for the party cast to file the record in the appel *626 late court; Novissima Recop. lib. 11, tit. 20, l. 2: that only one year was allowed to obtain a decision on it; Idem, l. 5. Curia Philipica, p. 5. mejora, n. 10, and that in default of complying with these regulations, the appeal must be considered as deserted, and the judgment conclusive and binding on the parties thereto.
To this it has been replied, that the period of forty days was the term fixed in old Spain before the discovery of this continent, and that the same regulations could not apply to her possessions in America, where, from the vast distance between them, it was impossible to comply with such a regulation, and that in regard to finishing the cause in one year, that also was, in many instances, utterly impossible, as the appellate tribunal might, from the multiplicity of affairs before it, or from other causes, be unable to examine the case within that time.
It was much debated wdiether the law, giving forty days to file the necessary papers in the superior tribunal, governed this case. We deem it unnecessary to enter into the question on the reasoning offered, as we find an express authority regulating the mode by which appeals were to be carried from this province.
*627 The regulations on this subject, prescribed ° v 1 by the Spanish government, on taking possession of Louisiana, after directing the manner in which the record shall be made up, go on to declare — that the papers must be presented to the superior tribunal within the delay fixed; which shall be according to the distance from this province, to that where the court of appeals holds its sessions. That this delay shall begin to run from the day the first registered ship leaves this port, for that where the superior tribunal is established; that the judge shall direct the record to be sent by that ship, and if the appellant does not establish that, within the delay given, he has prosecuted his appeal, or that there was a lawful impediment which prevented him doing so, he shall lose the benefit of his appeal, and execution will issue at the first requisition of the opposite party. O’Reilly’s Instructions, p. 18 and 19.
As the appellant has not proved that this law has been complied with, we know of no other that can govern the case, save that cited from the Recopilacion, and consequently we must hold the appeal deserted, and the sentence of the inferior court confirmed. Curia Philipica, p. 5. Mejora, n. 1.
*628 Were we to admit that the circumstance of presenting the papers to the superior tribunal, and the receiving of them there, cures this irregularity, another objection must be got over, before we can consider the proceedings in that suit open for examination.
We have seen by the laws of Spain, that appeals were required to be prosecuted in one year to final judgment, unless the party was prevented by some cause beyond his control. It is said, that in many instances it must be impossible to comply with this regulation. We admit the correctness of the observation; but then it is the duty of the appellant to prove those facts which put it out of his power to comply with it. Curia Philipica, Mejora, n. 1 and 10. This has not been done here, and after a lapse of nearly tw enty years, every presumption is opposed to the exercise of due diligence on his part.
The defendant however insists, that the moment the superior tribunal was seized of the cause, the decision of the judge a quo could not pass into the authority of the thing judged, and was without any effect until confirmed by the court of appeals. In support of this position, he has cited Febrero, cinco juicios, lib. 3, *629 cap. 1, sec. 13, n. 490 and 491. This author * ⅜ does state the law to be such. Yet we find it expressly laid down in the Curia Philipica, Mejora, n. 1 and 10, that if the appeal is not prosecuted within one year, it shall be considered as abandoned, and the sentence of the inferior tribunal confirmed. To reconcile these authors, we must understand the former to speak of the effect which the appeal had within the limitation prescribed by law, for it to be acted on.
Moreau for the plaintiffs, Derbigny for the defendant.
As the appeal in this cause did not suspend execution, it was unnecessary to cite the party in the inferior court, to shew cause why he had not prosecuted it. The case of Croizet vs. Le Blanc & al., 4 Martin, 272, is an express authority on this point, and it is unnecessary to enter again into a question settled by that decision.
It is therefore ordered, adjudged and decreed, that the judgment of the parish court be affirmed with costs.